IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**WESLEY L. ADKINS,**

    **Plaintiff,**

v.                                                                                        **CASE NO. 24-3223-JWL**

**STATE OF KANSAS, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). Plaintiff has paid the filing fee. On February 25, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 6) ("MOSC") ordering Plaintiff to show good cause why his claims should not be dismissed and granting Plaintiff an opportunity to file an amended complaint to cure the deficiencies noted in the MOSC. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 8). Plaintiff also filed a response (Doc. 7) to the MOSC. The Court's screening standards are set forth in the MOSC. Because Plaintiff's response fails to show good cause why it should not be dismissed, and his Amended Complaint fails to cure the deficiencies set forth in the MOSC, the Court dismisses this matter for failure to state a claim.

**I. Nature of the Matter before the Court**

Plaintiff's claims relate to his housing assignment at EDCF. Plaintiff acknowledges that following his battery on a correctional officer at LCF on April 6, 2024, he was immediately transferred to EDCF on April 8, 2024. (Doc. 7–1, at 7.)

Plaintiff alleges in his Amended Complaint that on April 8, 2024, Defendant Lewis subjected Plaintiff to living conditions and confinement in MRA-Status/Temporary Security Risk

1

under K.A.R. § 44-14-307.  (Doc. 8, at 5.)  Plaintiff alleges that on April 22, 2024, Plaintiff was placed on Long-Term Restrictive Housing Status under IMPP 20-104A IV.B.(1).  *Id*. at 6.  Plaintiff alleges that under this status he is supposed to have the same housing standards and conditions of confinement for short-term restrictive housing, and opportunities for three hours or more a day out-of-cell time.  *Id*.

Plaintiff alleges that on May 1, 2024, he appeared before the Restrictive Housing Review Board and requested to be taken off of MRA-Status/Temporary Security Risk under K.A.R. 44-14-307.  *Id*.  Plaintiff alleges that he was deprived of his rights under IMPP 20-104A IV.B.(1), when Defendant Lewis stated that Plaintiff's conditions of confinement would be reviewed on a weekly basis, and when Defendant Austin stated that it would be at least four months before Plaintiff would be considered for placement in a regular segregation cell.  *Id*. at 6–7.  Plaintiff alleges that on May 1, 2024, KDOC officials violated his Eighth Amendment right "when they exhibited deliberate indifference to [his] confinement, which is known to pose a substantial risk of serious harm."  *Id*. at 2.  Plaintiff's single count alleges an Eighth Amendment violation based on cruel and unusual punishment and deliberate indifference.  *Id*. at 5.

Plaintiff alleges that he submitted a "special kind of problem grievance" to the Warden on May 4, 2024, and on May 9, 2024, the Warden responded that the matters raised in the grievance did not constitute a difficult or complex problem justifying treating them as a special problem.  *Id*. at 7–8.  Plaintiff alleges that he appealed to the Secretary of Corrections, and Defendant Holthaus deprived Plaintiff of his rights under IMPP 20-104A IV.B.(1) when she responded that his complaint was about the classification process and therefore not subject to grievance procedures.  *Id*. at 8.

Plaintiff alleges that all of these actions show deliberate indifference to Plaintiff's living conditions and confinement, "which is known to pose a substantial risk of serious harm."  *Id*. at

8–9. Plaintiff alleges that despite his grievances, "the Administration failed to comply with the Internal Management Policy and Procedures." *Id*. at 11.

Plaintiff names as defendants: the State of Kansas; Darcie Holthaus, Corrections Manager, Kansas Department of Corrections ("KDOC"); Tommy L. Williams, EDCF Warden; David S. Lewis, EDCF Classifications Manager; and Cody W. Austin, Lieutenant, EDCF. Plaintiff seeks $10,000,000 in compensatory damages. *Id*. at 11.

In his response to the Court's MOSC, Plaintiff states that during his confinement on MRA-Status/Temporary Security Risk, he went on a three-day hunger strike, contemplated suicide, and lost sleep and weight. (Doc. 7, at 2–3.) He also indicates that he was provided with medication for anxiety and depression. *Id*. at 3. When he experienced side-effects from his medication, he was prescribed a different medication. *Id*. Plaintiff describes MRA-Status/Temporary Security Risk living conditions as "unconscionable and dramatically inhumane." *Id*. at 2.

Plaintiff's Administrative Segregation Report states that Plaintiff was placed on OSR status:

> after he severely brutalized an officer in LCF. The Officer that was battered had to be taken offsite to receive medical care. The attack was unprovoked and left the female officer in the ICU with severe injuries. . . . Resident has failed to take responsibility or show remo[r]se for his actions, continuing to refer to the attack as "the unfortunate incident." This behavior represents a clear threat to the safety and security of the facility and placement on OSR is recommended.

(Doc. 7–5, at 1.) Plaintiff includes a grievance response providing that:

> Due to the seriousness of the attack you committed on a female staff member it was determined you would need to be on a higher security alert status. When you attended the Restrictive Housing Review board you were told that it will be reviewed weekly. The security measures will be adjusted, like you were told, when we believe you are no longer a risk to our staff.

(Doc. 7–1, at 10.)

3

## II. DISCUSSION

### 1. Classification

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose")). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted,

lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

The Court found in the MOSC that any claim regarding his security classification is subject to dismissal for failure to state a claim. Plaintiff has failed to show good cause why this claim should not be dismissed.

### 2. Cruel and Unusual Punishment

Plaintiff alleges that he was subjected to cruel and unusual punishment. A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The

5

Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

The Court found in the MOSC that Plaintiff failed to provide factual support for the alleged "known risk of serious harm." The Court found that he acknowledges that he was provided with periodic meetings with the review board, mental healthcare and medication, and grievance procedures. Plaintiff's placement was reviewed on a weekly basis. The Court found that Plaintiff's Eighth Amendment claim was subject to dismissal for failure to allege that any defendant was deliberately indifferent. Plaintiff's Amended Complaint fails to cure this deficiency. He has failed to show that a defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that they also drew the inference.

### 3. Failure to Follow IMPPs

Plaintiff continues to allege that Defendants failed to follow regulations and IMPPs. The Court found in the MOSC that Plaintiff's claims based on state regulations and IMPPs were subject to dismissal for failure to state a constitutional violation.

The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to

6

> confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007). Plaintiff has failed to cure this deficiency.

### 4. Grievances

The Court also found in the MOSC that Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").

### III. Conclusion

The Court's MOSC provides that "[i]f Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice for failure to state a claim." (Doc. 6, at 14.) Plaintiff has failed to show good cause why his claims should not be dismissed and his Amended Complaint fails to cure the deficiencies set forth in the MOSC.

7

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated April 10, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
